UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:17-CV-20782-DPG

MSPA CLAIMS 1, LLC,

      Plaintiff,

v.

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFF'S THIRD AMENDED
CLASS ACTION COMPLAINT FOR DAMAGES**

MSPA Claims 1, LLC ("MSPA" or plaintiff), on behalf of itself and a Class of similarly-situated Medicare Advantage Organizations ("MAOs") and their assignees operating in the State of Florida sues defendant, Allstate Property and Casualty Insurance Company ("Allstate" or defendant).

## I.  NATURE OF THE ACTION

Medicare is a system of federally-funded health insurance for people 65 and older, certain disabled persons, and persons with end stage renal disease. Congress enacted the Medicare program in 1965, as Title XVIII of the Social Security Act (the "Medicare Act"). 42 U.S.C. § 1395, *et seq.* Medicare is an enormous and complex federal program that insured over 55.3 million Americans in 2015 with total expenditures of $647.6 billion, compared to total income of $644.4 billion, a deficit of $3.2 billion.

As set forth below, in response to the rising cost of healthcare paid for by the Medicare program, Congress created the Medicare Advantage program "to harness the power of private sector competition to stimulate experimentation and innovation that would ultimately create a more

efficient and less expensive Medicare system." *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 685 F.3d 353, 363 (3d Cir. 2012) (citing H.R. Rep. No. 105-217, at 585 (1997), 1997 U.S.C.C.A.N. 176, 205-06 (Conf. Rep.)). By allowing private insurers to offer Medicare benefits, Congress intended for the efficiencies of private managed-care systems to reduce Medicare costs. Private insurers that offer Medicare benefits are called MAOs.

To ensure that the Medicare Advantage program reduces Medicare costs, Congress created the "Medicare Secondary Payer" provisions, codified at 42 U.S.C. § 1395y (the "MSP Act"), which made Medicare and MAOs the payers of last resort. For example, where a Medicare beneficiary incurs medical expenses arising from an automobile accident, any applicable automobile liability and no-fault insurance policies should pay first, and are the "primary" source of recovery for medical expenses. Medicare and MAOs should pay last (if ever at all), and are the "secondary" source of recovery. *See* 42 U.S.C. § 1395y(b)(2). Under the MSP Act, if Medicare or an MAO pays when a primary payer should have paid, such a payment is deemed to be a "conditional payment," and the primary payer is required by law to reimburse Medicare or the MAO that made the conditional payment.

Refusal and failure to reimburse conditional payments is endemic in the automobile-insurance industry. Virtually every no-fault automobile insurer has displayed a systemic and uniform course of conduct of refusing to reimburse Medicare and MAOs for conditional payments. In this case alone, the defendant failed to reimburse thousands of conditional payments. This conduct impairs the ability of Medicare and MAOs to offer Medicare benefits to the millions of citizens who depend on them.

Fortunately, Congress gave MAOs a private right of action to bring recalcitrant insurers to heel, which plaintiff here asserts, together with common-law and equitable claims, as set forth below. Plaintiff asserts these claims on its own behalf and on behalf of a Class of similarly-situated

MAOs and assignees to recover conditional payments made on behalf of MA enrollees (the "Enrollees") for medical expenses resulting from car accidents ("accident-related medical expenses"). These payments were conditional because the defendant insured the Enrollees under no-fault insurance policies when the accidents occurred. Under the MSP Act, the defendant was the primary insurer and should have paid its insureds' accident-related medical expenses. Any payments by MSPA's assignors or Class Members were conditional payments requiring reimbursement. Despite its obligation to pay, the defendant has failed and refused to reimburse those conditional payments, which subjects it to liability under the MSP Act and Florida law.

Accordingly, MSPA sues, on its own behalf and on behalf of a Class of similarly-situated MAOs and their assignees, to recover conditional payments for Enrollees' accident-related medical expenses that the defendant failed or refused to reimburse. On behalf of itself and the Class, MSPA seeks: (1) double damages under the MSP Act for the defendant's failure to properly reimburse MSPA and the Class for conditional payments for Enrollees' accident-related medical expenses within the applicable limitations period; and (2) reimbursement for all sums, on a fee-for-service basis, that MSPA's assignors and Class Members were billed for medical care and treatment rendered to the Enrollees within the applicable limitations period, for which the defendant was responsible as primary payer.

## II.  JURISDICTION, PARTIES, AND VENUE

1.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1367, and 42 U.S.C. § 1395y(b)(3)(A).

2.      MSPA is a limited liability company that is duly organized, validly existing, and in good standing under Florida law, with its principal place of business in Miami-Dade County, Florida.

3.      Allstate is an insurer operating and conducting business in the State of Florida. As

3

an ongoing and regular activity in the ordinary course of its business, Allstate issues insurance policies in Florida that provide personal injury protection ("PIP") benefits, as well as medical and extended medical-expense coverage, that must comply with Fla. Stat. §§ 627.730-627.7405. This class action arises from that ongoing and regular business activity of defendant in Florida over which personal jurisdiction exists under Fla. Stat. § 48.193(1)(a)(1).

4.      Venue is proper in this district under 28 U.S.C. § 1391(b).

5.      All conditions precedent to this action have occurred, been performed, or have been waived or excused.

### III.  BACKGROUND

*A.*     *The Medicare Act*

6.      Subchapter XVIII of the Social Security Act—commonly called the Medicare Act—is divided into five "Parts."

7.      Part A provides hospital benefits and certain other medical facility benefits. Because most beneficiaries have paid Medicare payroll taxes for 39 quarters or more, they are not required to pay a premium, although all must pay a deductible for each hospital stay.[1] 42 U.S.C. §§ 1395c to 1395i-5. Part B pays 80% of the cost of covered medical treatment, and although heavily subsidized by the federal government, requires beneficiaries to pay an annual deductible and a monthly premium. *See* 42 U.S.C. §§ 1395j to 1395w-4. Parts A and B are often collectively referred to as the "original Medicare fee-for-service program option."

8.      Part C creates an alternative option for Medicare benefits provided by private contractors such as MAOs. *See* 42 U.S.C. §§ 1395w-21 to 1395w-29. Congress enacted Part C to "enable the Medicare program to utilize innovations that have helped the private market contain

---

[1] *See* https://www.medicare.gov/your-medicare-costs/costs-at-a-glance/costs-at-glance.html, last accessed on November 20, 2017.

4

costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.). Congress initially called this program "Medicare + Choice." *See* Balanced Budget Act of 1997, Pub. L. No. 105-33, Title IV, §§ 4001-4006, 111 Stat. 251, 275-334 (Aug. 5, 1997). In 2003, Congress strengthened the program and renamed it "Medicare Advantage." *See* Medicare Prescription Drug, Improvement, and Modernization Act of 2003 ("MMA"), Pub. L. No. 108-173, Title II, §§ 201-241, 117 Stat. at 2176-221.

9.      Part D was added in 2003 and provides prescription drug benefits. *See* Title I, §§ 101-111, 117 Stat. 2066, 2071-176 (Dec. 8, 2003) (codified at 42 U.S.C. §§ 1395w-101 to 1395w-152).

10.     Part E contains definitions and general provisions applicable to the Medicare program as a whole. *See* 42 U.S.C. §§ 1395x -1395y. The Medicare Secondary Payer law, 42 U.S.C. 1395y(b), is codified in Part E.

**B.      *The Medicare Advantage (Medicare Part C) Program***

11.     The Medicare Act guarantees eligible beneficiaries the right to elect to receive Medicare benefits either through the Original Medicare fee-for-service option or through a Medicare Advantage plan operated by an MAO. *See* 42 U.S.C. § 1395w-21(a). Approximately 30% of all Medicare beneficiaries choose to enroll in Medicare Advantage plans and take advantage of the provision of benefits at no cost, or a far lower cost than original Medicare.

12.     The Medicare Advantage program is funded by the Medicare Trust Fund, which were created to hold the revenue collected from Medicare payroll taxes. *See* 42 U.S.C. § 1395w-23(f). The Medicare Trust Funds expend ***more than one hundred billion dollars annually*** to provide Medicare benefits through the Medicare Advantage program.

13.     The Conference Committee that drafted and finalized the Part C legislation believed that Medicare Advantage would "eventually eclipse original fee-for-service Medicare as

5

the predominant form of enrollment under the Medicare program." *See* Balanced Budget Act of 1997, P.L. 105-33, H.R. Conf. Rep. 105- 217 (July 30, 1997).

14.     Under the Medicare Advantage program, the Centers for Medicare and Medicaid Services ("CMS") pay MAOs a monthly fixed amount (called a capitation) for each enrollee. CMS then delegates to the MAOs the duty to administer, pay, and assume all economic risk for the Medicare benefits provided to their Part C enrollees, in accordance with the requirements of Title XVIII and CMS Medicare regulations. *See* 42 U.S.C. § 1395w-23(a)(1)(A); 42 C.F.R. § 422.268.

15.     When MAOs recover reimbursement for conditional payments from primary plans or other primary payers under the MSP Act, those recoveries help reduce expenditures by the Medicare Trust Fund. Thus, reimbursement recoveries by MAOs (such as the Class Members here) promote the essential purpose of the MSP Act (and the MA program)—to shift expenses from the Medicare program to primary payers.

*C.*     ***The Medicare Secondary Payer Act***

16.     Before 1980, Medicare generally paid its enrollees' medical expenses, regardless of whether another insurer or tortfeasor was legally responsible for payment.

17.     In 1980, in response to skyrocketing costs, Congress passed the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y(b).

18.     The MSP Act created a federal coordination of benefits regime, in which workers compensation, liability insurance, and no-fault insurance are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 422.108(b)(3). The system works as follows and can be broken down into three simple steps.

19.     *First*, Medicare or an MAO pays for a beneficiaries' medical expenses or services, whether covered by Medicare Part A, B, C, or D. That payment is "conditional" or "secondary"

where another payer (such as a tortfeasor or a no-fault insurer (*i.e.*, the defendant)) is responsible. 42 C.F.R. § 411.21. The payment is "conditioned" on repayment to Medicare or an MAO.

20.     *Second*, after Medicare or an MAO makes a conditional or secondary payment—regardless of the reason—Medicare and MAOs may ***recover*** those conditional payments from the primary payer or plan. *See* 42 U.S.C. § 1395y(b)(2); § 1395y(b)(3)(A). The primary plan has 60 days to reimburse conditional payments.

21.     *Third*, if the primary plan fails to reimburse conditional payments, then the MSP Act, as confirmed by the Eleventh Circuit,[2] authorizes both Medicare and MAOs to sue the primary plans to recover conditional payments. The Act further provides for double damages.

22.     The Eleventh Circuit, and other circuit courts that have authorized MAOs to sue to recover conditional payments, recognize that recovery of conditional payments under the MSP Act helps to reduce Medicare expenditures by the Medicare Trust Fund. *See* HHS, *Medicare Program; Policy and Technical Changes to the Medicare Advantage and the Medicare Prescription Drug Benefit Programs,* 75 Fed. Reg. 19678, 19797 (April 15, 2010) ("MAOs that faithfully pursue and recover from liable third parties will have lower medical expenses.").

23.     The size, scope, and expense of the Medicare Advantage program, and the well-documented fragility of the Medicare Trust Fund, underscore the importance of holding auto-insurers like the defendant liable for the primary payments they are obligated to make and not allowing them to impose the burden of those payments on MAOs and, ultimately, on the Medicare Trust Fund.

---

[2] *E.g., Humana Med. Plan, Inc. v. Western Heritage Ins. Co.,* 832 F.3d 1229 (11th Cir. 2016).

24.     Thus, this action, which seeks MSP Act recoveries for conditional payments made by MAOs and their assigns, promotes the essential purpose of the MSP Act and Medicare Part C— that is, fostering a more efficient and less expensive Medicare program.

## IV.     STANDING

25.     MSPA has entered into binding agreements with certain MAOs and their assigns (the "Assignors"). The Assignors have irrevocably assigned to MSPA all rights of recovery, subrogation, and reimbursement for their conditional payments during the relevant limitations period. Because MSPA owns the Assignors' claims and associated rights, MSPA has standing to bring this action to recover the conditional payments for accident-related medical expenses that its Assignors made on behalf of their Enrollees.

26.     By way of example, MSPA holds an assignment from Florida Healthcare Plus ("FHCP"), a former MAO. As a further representative example, FHCP Enrollee C.R. was involved in an auto accident on July 24, 2013. FHCP made conditional payments on behalf of C.R., who was at the time insured by the defendant. As a primary payer, the defendant was statutorily obligated, but failed, to reimburse FHCP for those conditional payments. In like fashion, the MAO Assignors made conditional payments on behalf of Enrollees that the defendant failed to reimburse. The defendant's failure to reimburse gives rise to statutory and common-law rights to recover these conditional payments from the defendant, which FHCP and the MAO Assignors have ultimately assigned to MSPA. We describe below one of the assignments from FHCP, as an example.

## V.  THE BINDING AND IRREVOCABLE ASSIGNMENTS

27.     On April 15, 2014, FHCP assigned all of its rights and claims for subrogation, recovery and reimbursement against any liable primary payer, including the defendant, to La Ley

Recovery Systems, Inc. ("La Ley Recovery"). Specifically, Section 1.1 of the agreement states that:

> [b]y way of this agreement, [FHCP] appoints, directs, and otherwise *assigns* all of [FHCP's] rights as it pertains to the rights pursuant to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

*See* **Exhibit A**, § 1.1 (emphasis added) (the "Assignment Agreement").

28.     The agreement authorized La Ley Recovery to assign the agreement to subsequent entities, so long as that assignment was approved. **Exhibit A**, § 1.2. La Ley Recovery assigned the agreement to plaintiff. See **Exhibit B**. Following that assignment, FHCP accepted, acknowledged, approved, and consented to any subsequent assignment from La Ley Recovery to any then-existing or future MSP Company, which includes plaintiff.

29.     La Ley Recovery's assignment to Plaintiff was subsequently approved by FHCP's receiver through a settlement agreement ("Settlement Agreement") between FHCP, Inc., MSP Recovery LLC, MSP Recovery Services, LLC, and MSPA Claims 1, LLC, La Ley Recovery Systems Inc., and La Ley Recovery Systems (collectively referred to as the "MSP Companies"). A copy of the Settlement Agreement is attached as **Exhibit C**. In the Settlement Agreement, FHCP's receiver acknowledged and agreed to the terms and conditions of the FHCP-La Ley Recovery Assignment Agreement. **Exhibit C**, Recitals, § 2(a).

30.     On June 14, 2016, the Leon County Circuit Court approved the terms of the Settlement Agreement, specifically finding "that the Settlement Agreement was negotiated in good faith and is in the best interest of Florida Healthcare Plus, Inc.," and retained jurisdiction to enforce the terms of the Settlement Agreement. **Exhibit D**, *In Re: The Receivership of Florida Healthcare Plus, Inc.*, Case No. 2014 CA 2762, slip op., (Fla. 2d Cir. Ct. June 14, 2016).

## VI.  THE DEFENDANT'S SYSTEMATIC AND UNIFORM
## REFUSAL TO REIMBURSE CONDITIONAL PAYMENTS

31.     At all relevant times, the Enrollees of Assignors were Medicare beneficiaries who elected to obtain their Medicare benefits through Medicare Advantage plans administered by the Assignors.

32.     Within the applicable limitations period, the Enrollees, including the representative Enrollee, were provided with medical services, treatment or supplies, and incurred medical expenses, for injuries sustained in car accidents (those medical expenses are collectively referred to as the "accident-related medical expenses"). These injuries and expenses arose out of the use, maintenance, or operation of motor vehicles.

33.     Assignors, including those that covered the representative Enrollee, made conditional payments for the representative Enrollee's accident-related medical expenses.[3]

34.     Prior to the accidents, the defendant had issued no-fault insurance policies to the Enrollees that provided for PIP benefits, as well as medical expense and extended medical expense coverage, in accordance with Fla. Stat. §§ 627.730-627.7405. The defendant is primarily responsible for any bills for medical services or supplies, or both, incurred by its insureds resulting from the use, maintenance, or operation of a motor vehicle. *See* Fla. Stat. § 627.736(4).

35.     The defendant's no-fault insurance policies were primary plans that were in full force and effect at the times of the accidents and provided primary insurance coverage for the Enrollees' medical expenses resulting from the accidents. Copies of the policies are not available

---

[3] While not required to maintain this class action, the accident-related medical expenses were medically necessary, related, and reasonable as a matter of law. The defendant failed to fulfill its statutory obligation to reimburse the conditional payments by MSPA's assignors and Class Members, and also failed to timely assert that any of those conditional payments were not necessary, related, and reasonable. Consequently, the defendant has waived any right to challenge the conditional payments.

to the plaintiff but are in the defendant's possession. However, every no-fault policy in Florida is required to comply with Florida's Motor Vehicle No-Fault Law, and, as a result, the defendant was obligated to cover as the primary payer the medical expenses incurred for the injuries the Enrollees sustained because of the accidents.

36.     Although the defendant's no-fault policies were primary plans obligating the defendant to provide primary coverage for the Enrollees' accident-related medical expenses, Assignors, including FHCP, paid those medical expenses. The defendant has systematically and uniformly failed to reimburse hundreds, if not thousands, of conditional payments made by Assignors and the Class Members.

## VII.  CLASS REPRESENTATION ALLEGATIONS

37.     Under Federal Rule of Civil Procedure 23, MSPA brings this suit on its own behalf and on behalf of a Class of similarly situated MAOs operating in Florida and their assigns. MSPA seeks class certification of the claims alleged in this action, and judgment for damages against the defendant for itself and on behalf of the Class.

38.     The Class is defined as follows, and consists of:

> Entities (or assignees of entities), including Medicare Advantage Organizations ("MAOs"), that contracted with the Centers for Medicare and Medicaid Services to provide Medicare parts A, B, or D benefits through Medicare Part C Advantage plans to their Enrollees and made direct payments for medical services, treatment, supplies, or drugs ("medical expenses") on behalf of those Enrollees, where: (1) those medical expenses were defendant's primary obligation under auto insurance policies it issued to the Enrollees in accordance with  Fla. Stat. § 627.736(4), because those medical expenses were incurred as a result of the use, maintenance, or operation of a motor vehicle; and (2) defendant failed to reimburse the MAOs (or their assignees) for those medical expenses.

### A.   *Federal Rule of Civil Procedure 23(a)*

39.     Federal Rule of Civil Procedure 23(a) provides for class certification where the representative plaintiff demonstrates that:

1.      the members of the class are so numerous that joinder all members
        is impracticable;

2.      there are questions of law or fact common to the class;

3.      the claims or defenses of the representative parties are typical of the claims
        or defenses of the class; and

4.      the representative parties will fairly and adequately protect the
        interests of the class.

*(1)     Numerosity*

40.     The Class consists of at least 37 Florida MAOs or their assignees and is so
numerous that individual joinder of each Class Member is impracticable.

41.     On information and belief, all Class Members have Enrollees in their MA plans on
whose behalf they made conditional payments for accident-related medical expenses for which the
defendant was the primary payer, which the defendant failed to reimburse under the MSP Act,
Florida law, and other applicable laws.

*(2)     Commonality*

42.     Plaintiff and the Class have claims that raise common questions of law and fact.

43.     This is an action in which plaintiff and the Class Members assert claims alleging
the same theory of recovery—that is, that they are entitled to reimbursement from the defendant
for conditional, accident-related medical expense payments, which they made on behalf of
Enrollees who also were insured by auto insurance policies issued by the defendant.

44.     Like MSPA, each Class Member has the same rights to recover its conditional
payments under applicable law, including the MSP Act.

45.     MSPA's and the Class Members' claims arise from the same practice or course of
conduct. All of the claims arise from the defendant's routine and ongoing business practice of (a)
failing to make primary payments for its insureds' accident-related medical expenses, where those

12

insureds also are Enrollees in MAOs operated by plaintiff and Class Members (or their assigns), and (b) failing to reimburse MAOs for the conditional payments made for those Enrollees' accident-related medical expenses.

46.    MSPA's and the Class Members' damages were caused by the same practice or course of conduct—that is, the defendant's unlawful failure to make primary payments for its insureds' accident-related medical expenses, or to reimburse plaintiff and Class Members for the conditional payments made for those medical expenses.

47.    MSPA's and the Class Members' claims raise common questions of law and fact, including, but not limited to, whether:

    a.    Plaintiff's and the Class Members' (or their assigns') Enrollees incurred accident-related medical expenses while insured by no-fault auto insurance policies issued by the defendant;

    b.    The defendant is the primary payer responsible to make primary payments for the Enrollees' accident-related medical expenses under its contractual obligations, federal law, or Florida law;

    c.    Plaintiff and the Class Members (or their assigns) made conditional payments for accident-related medical expenses for which the defendant, as the Enrollees' no-fault insurance carrier, was responsible to make primary payments;

    d.    The defendant, under its contractual and statutory obligations as the Enrollees' no-fault auto insurer, is required to reimburse plaintiff and the Class Members for their (or their assigns') conditional payments for Enrollees' accident-related medical expenses;

    e.    Federal law preempts state law defenses, or any defenses defendant might raise that conflict with statutory and regulatory provisions making the defendant the primary payer for accident-related medical expenses;

    f.    Plaintiff and the Class Members have damages resulting from the defendant's failure to reimburse them for conditional payments of the Enrollees' accident-related medical expenses; and

    g.    Plaintiff and the Class Members may recover damages for the Enrollees' accident-related medical expenses under the MSP Act,

and such other or further relief as the law provides.

*(3)      Typicality*

48.      MSPA's claims are typical of the claims of the Class because they are based on the same legal theory, arise from the similarity, uniformity, and common purpose of defendant's unlawful conduct, and are not subject to any unique defenses. Members of the Class have sustained, and will continue to sustain, damages in the same manner as the plaintiff as a result of the defendant's wrongful conduct.

49.      MSPA's claims are typical of the Class Members' claims because the defendant failed to make primary payments for Enrollees' accident-related medical expenses, which it was obligated to do under the no-fault insurance policies it issued to the Enrollees, Florida law, and federal law.

50.      MSPA's claims are typical because the plaintiff, like the Class Members, has a right to relief for the defendant's failure to make primary payments, or reimburse MSPA and Class Members for conditional payments of the Enrollees' accident-related medical expenses.

51.      The defendant's business practices, acts and omissions are materially the same with respect to MSPA's and the Class Members' claims, as will be the defendant's legal defenses.

*(4)      Adequacy of Representation*

52.      MSPA and its attorneys will fairly and adequately protect and represent the interests of the Class Members.

53.      MSPA is a member of the Class defined above. As the representative plaintiff, MSPA is committed to the active and vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature. In fact, two courts have already concluded that MSPA is "willing and able to take an active role as class representative and advocate on behalf of all class members." *E.g., MSPA Claims 1, LLC v. Ocean Harbor Ca. Ins.*,

2017 WL 477124 (Fla. 11th Cir. Ct. 2017); *MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, Case No. 15-27940- CA-21, slip op. at 7-8 (Fla. 11th Cir. Ct. Apr. 20, 2017).

54.     There is no hostility of interests between plaintiff and the other Class Members. The plaintiff has no claims that are antagonistic to the claims of the Class Members and anticipates no difficulty in the management of this litigation as a class action.

55.     The plaintiff's counsel have the experience, resources, and commitment to vigorously prosecute this case to a successful resolution.

**B.     *Federal Rule of Civil Procedure 23(b)(3)***

56.     In addition to satisfying Federal Rule of Civil Procedure 23(a), a class action must satisfy Rule 23(b)(3). This class action is maintainable pursuant to Rule 23(b)(3).

*(1)     Predominance*

57.     In this case, common liability issues of law and fact predominate over any hypothetical or potential individualized issues.

58.     Plaintiff's and the Class Members' claims arise from a common nucleus of operative fact and share, among other things, the common issues of law and fact set forth above. The overarching and predominating common issue in this action is whether defendant failed to make primary payments, or reimburse plaintiff and Class Members for conditional payments, for the accident-related medical expenses of defendant's insureds who also were Enrollees of MAOs operated by Class Members (or their assigns), in violation of their legal obligations.

59.     Plaintiff maintains a reasonable methodology for generalized proof of class-wide impact, using a software system (the "MSP System") designed and developed by plaintiff. The MSP System captures, compiles, synthesizes, and analyzes large amounts of data in order to identify claims for reimbursement of conditional payments. The plaintiff is capable of using the MSP system to identify and quantify Class Members' claims, as it has done for its own claims,

15

and as two other courts have recognized as a viable method to prove damages in this case. *E.g.,*
*MSPA Claims 1, LLC v. Ocean Harbor Ca. Ins.*, 2017 WL 477124 (Fla. 11th Cir. Ct. 2017);
*MSPA Claims 1, LLC v. IDS Prop. Cas. Ins. Co.*, Case No. 15-27940- CA-21, slip op. at 7-8 (Fla.
11th Cir. Ct. Apr. 20, 2017).

     *(2)*    *Superiority*

     60.    A class action is superior to other available methods for the fair and efficient
adjudication of this litigation because a class action is the most manageable and efficient way to
resolve the individual claims of each Class Member.

     61.    Specifically, a class action is the superior method of adjudicating plaintiff's and
the Class Members' claims because it will provide Class Members with what may be their only
economically viable remedy, in view of the efficiency of the MSP system in identifying claims for
reimbursement of conditional payments. What's more, there are no known Class Members who
are interested in individually controlling the prosecution of separate actions. In addition, a class
action will concentrate all litigation in one forum, which will conserve judicial and party
resources with no unusual manageability problems, because issues regarding defendant's liability
and the nature of Class Members' damages will be determined by class-wide proof, while the
amounts of Class Members' damages will be determined by class-wide methods of data
processing and computation. Finally, there are no known Class Members who are interested in
individually controlling the prosecution of separate actions.

## VIII.  CAUSES OF ACTION

### COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

     Plaintiff incorporates by reference the allegations of paragraphs 1 to 61 above as if fully
set forth here and further alleges that:

62.    Assignors, including FHCP, and the Class Members made conditional payments for treatment of its Enrollees' accident-related medical expenses in an amount to be proven at trial.

63.    The accident-related medical expenses were incurred at a time when the Enrollees were insured by auto insurance policies issued by the defendant.

64.    The defendant's auto insurance policies were primary plans, and defendant was the primary payer, under Florida law and 42 U.S.C. § 1395y(b)(2) and § 1395w-22(a)(4), with respect to the accident-related medical expenses that Assignors and Class Members paid.

65.    Because the defendant was the primary payer, the Assignors' and the Class Members' payments of the accident-related medical expenses were conditional payments. *See* 42 C.F.R. § 411.21.

66.    The defendant was and is legally responsible for payment or reimbursement of the accident-related medical expenses.

67.    Defendant knew, had reason to know, or should have known of its statutory duty, as primary payer, to pay for the Enrollees' accident-related medical expenses, or reimburse Assignors and Class Members for their conditional payments.

68.    The defendant failed to make primary payments for the Enrollees' accident-related medical expenses, and failed to make appropriate reimbursement to the Assignors and the Class Members for the accident-related medical expenses.

69.    The defendant also failed to make primary payments or appropriate reimbursement for the Assignors and the Class Members' conditional payments of their Enrollees' accident-related medical expenses in situations where defendant was the primary payer.

70.    Plaintiff, for itself and on behalf of the Class, brings this claim under 42 U.S.C. § 1395y(b)(3)(A), to recover double damages from the defendant for its failure to make primary

17

payments or appropriate and timely reimbursement of the plaintiff's and Class Members'
conditional payments of their Enrollees' accident-related medical expenses.

71.     Plaintiff and Class Members (or their assigns) have damages equal to twice the
amount of the conditional payments for the Enrollees' accident-related medical expenses, in an
amount to be proven at trial.

WHEREFORE, the plaintiff, for itself and on behalf of the Class, demands judgment
against the defendant for double damages and such other and further relief as this Court deems
just and proper.

**COUNT II**
**Breach of Contract for Failure to Pay PIP Benefits**
**[Conventional Subrogation]**

Plaintiff incorporates by reference the allegations of paragraphs 1 to 61 above as if fully
set forth here and further alleges that:

72.     Plaintiff alleges certain claims here by way of subrogation.

73.     At all times material to this action, the Assignors, including FHCP, and the Class
Members provided health insurance, health maintenance organization plans, Medicare Advantage
plans, and third-party administration services to people and groups, including the Enrollees.

74.     Assignors and the Class Members are subrogated to the right to recover from the
defendant, the primary plan, for the defendant's failure to make primary payment or reimbursement
to the Assignors and the Class Members' Enrollees' accident-related medical expenses.

75.     Assignors and the Class Members paid for the Enrollees' accident-related medical
expenses in amounts to be proven at trial, pursuant to its agreements with CMS and medical
services providers.

76.     Defendant failed or refused to make primary payments of no-fault insurance
benefits, as it was obligated to do.

77.     Defendant's failure to pay or make timely reimbursement for the Enrollees' accident-related medical expenses has caused the Assignors and Class Members damages, as set forth here, in amounts to be proven at trial.

78.     Plaintiff has complied with all applicable conditions precedent to the institution of this claim.

WHEREFORE, the plaintiff, for itself and on behalf of the Class, demands judgment against the defendant for damages, reasonable attorney's fees pursuant to Fla. Stat. § 627.428, and such other and further relief as this Court deems just and proper.

## COUNT III
### Breach of Contract for Failure to Pay PIP Benefits
### [Equitable Subrogation]

Plaintiff hereby incorporates by reference the allegations of paragraphs 1 to 61 above as if fully set forth here and further alleges that:

79.     Plaintiff made a claim under the insurance policy issued by the defendant seeking PIP benefits for services provided to the Enrollee. Plaintiff otherwise complied with all conditions precedent prior to the institution of this action.

80.     Assignors provided full payment for Enrollee's medical expenses even though it was not primarily liable for the medical expenses, as there was a no-fault insurance policy in effect at the time of the accident issued by the defendant, which provided primary coverage for the Enrollee's medical expenses.

81.     Defendant failed or refused to make complete payment of the Enrollees' no-fault benefits for accident-related medical expenses, as was required by Fla. Stat. § 627.736.

82.     Defendant failed to pay or reimburse Assignors and the Class Members for the Enrollees' accident-related medical expenses, and had no reasonable basis, let alone proof, to contend that it was not responsible for payment.

19

83.     Defendant's failure to pay or make timely reimbursement for the Enrollees' accident-related medical expenses has caused Assignors and the Class Members damages, as set forth here, in amounts to be proven at trial.

84.     Plaintiff has complied with all applicable conditions precedent to the institution of this claim.

WHEREFORE, the plaintiff, for itself and on behalf of the Class, demands judgment against the defendant for damages, reasonable attorney's fees pursuant to Fla. Stat. § 627.428, court costs, interest, and such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Dated: November 20, 2017.

**RIVERO MESTRE LLP**

*Counsel for plaintiff and the Class*
2525 Ponce de León Blvd., Suite 1000
Miami, Florida 33134
Telephone:  (305) 445-2500
Facsimile:   (305) 445-2505
E-mail: arivero@riveromestre.com
E-mail: jmestre@riveromestre.com
E-mail: cwhorton@riveromestre.com
E-mail: knwamah@riveromestre.com
Secondary: npuentes@riveromestre.com

By:  ___/s/ Andrés Rivero_____
       ANDRES RIVERO
       Florida Bar No. 613819
       JORGE A. MESTRE
       Florida Bar No. 088145
       ALAN H. ROLNICK
       Florida Bar No. 715085
       CHARLES E. WHORTON
       Florida Bar No. 46894
       KINGSLEY C. NWAMAH
       Florida Bar No. 118364

20

## CERTIFICATE OF SERVICE

**WE CERTIFY** that a duplicate of this pleading was electronically filed on November 20,

2017 with the Clerk of the Court using CM/ECF filing system.

/s/ Andrés Rivero

ANDRÉS RIVERO